


NOV 16 2016

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA

SECOND SUPERSEDING INDICTMENT

v.

NO. 3:16-CR-101-CRS
21 U.S.C. § 331(a)
21 U.S.C. § 331(t)
21 U.S.C. § 333(a)(2)
21 U.S.C. § 333(b)(1)(D)
21 U.S.C. § 353(b)(1)
21 U.S.C. § 353(e)(1)(a)(II)
21 U.S.C. § 841(a)(1)
21 U.S.C. § 841(h)(1)(A)-(B)
21 U.S.C. § 846
21 U.S.C. § 853
21 U.S.C. § 841(b)(1)(E)
18 U.S.C. § 2
18 U.S.C. § 371
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1028A(c)(11)
18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C. § 1347
18 U.S.C. § 1349
18 U.S.C. § 1519
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982
18 U.S.C. § 1028
28 U.S.C. § 2461

**PHILIP E. MICHAEL, II**
**MEDS 2 GO EXPRESS PHARMACY, INC.**
**MARK REINHARD**
**EUTON LAING**
**JOETTA KUHN**

The Grand Jury charges:

**INTRODUCTION**

At all times relevant to this Indictment:

1. RX Limited was an international organization which marketed and sold various drugs, which, by law, require a prescription, including drugs that were controlled substances

under Federal law, to United States customers. The organization was managed and operated by various individuals known and unknown to the grand jury.

2. RX Limited sold prescription drugs over the Internet to customers in the Western District of Kentucky and elsewhere, using various marketing website addresses. The websites ("RX Limited's marketing websites") were linked via the Internet to RX Limited's Internet infrastructure and operating systems, and enabled customers to place drug orders over the Internet, and through various toll-free telephone numbers, without a physical examination or doctor-patient relationship.

3. RX Limited employed physicians, and persons posing as physicians, to approve the drug orders placed using RX Limited's marketing websites, and toll-free telephone numbers, and to authorize the purported prescriptions for the customer. Each physician or person posing as a physician employed by RX Limited ("RX Limited physician") was paid a commission for each order he or she approved.

4. RX Limited employed U.S. pharmacies to fill RX Limited customers' drug orders. Each pharmacy employed by RX Limited was paid a commission for each order filled by the pharmacy ("RX Limited fulfillment pharmacy"). Once an order was filled, the prescription drugs were shipped to the customer via commercial carrier, including FedEx, United Parcel Service, and the United States Postal Service ("USPS"). Shipment charges were paid by RX Limited through accounts controlled by RX Limited's associates.

5. **PHILIP E. MICHAEL, II, ("PHILIP MICHAEL")** was an RX Limited fulfillment Pharmacist, who was a licensed pharmacist, with an active license to dispense drugs in the State of West Virginia. **PHILIP MICHAEL** was a pharmacist at Aracoma Pharmacy of

Chapmanville ("Aracoma Pharmacy") in Chapmanville, West Virginia as well as other pharmacies.

6. **PHILIP MICHAEL**, owned and operated Meds 2 Go, Inc. In May 2012, **PHILIP MICHAEL** opened another pharmacy known as **MEDS 2 GO EXPRESS PHARMACY, INC.**, ("**MEDS 2 GO EXPRESS**") located in Alum Creek, West Virginia. Defendant **PHILIP MICHAEL** was also the owner and operator of Alum Creek Pharmacy, located in Alum Creek, West Virginia.

7. **PHILIP MICHAEL** was the "Pharmacist in Charge" at Aracoma Pharmacy and later was a pharmacist at both Meds 2 Go, Inc. and **MEDS 2 GO EXPRESS**.

8. **EUTON LAING**, J.N.B., E.S.K., and others, were RX Limited Physicians licensed to practice medicine in New Jersey, South Carolina, and California respectively.

9. Meds 2 Go Pharmacy was a "fulfillment" pharmacy which filled prescription drug orders received from internet websites controlled by an organization known as RX Limited, among others, which operated internet websites that distributed and dispensed prescription drugs to customers without a valid prescription.

10. **MARK REINHARD** was a pharmacist employed at **MEDS 2 GO EXPRESS** and later employed at times at Alum Creek Pharmacy who engaged in unlicensed wholesale distribution.

11. **JOETTA KUHN** was an accountant for **PHILIP MICHAEL**, Meds 2 Go, Inc. and **MEDS 2 GO EXPRESS**, and was responsible for preparing their taxes along with other corporations owned by **PHILIP MICHAEL**.

12. The National Association of Boards of Pharmacy's ("NABP") Verified Internet Pharmacy Practice Sites ("VIPPS") program was created by the NABP in response to concerns regarding the safety of pharmacy practices on the Internet. VIPPS certified online pharmacy sites

that met certain criteria, including verification of all necessary state pharmacy and pharmacist licenses, verification of patient privacy, security of prescription orders, and adherence to quality assurance. VIPPS also ensured that online pharmacies provide a meaningful consultation between patients and pharmacists, comply with applicable state and federal laws and regulations, including policies and procedures that assure that prescription medications are not prescribed or dispensed based on telephonic, electronic, or online medical consultations without a pre-existing patient-prescriber relationship that included an in-person physical examination. None ofRX Limited's marketing websites obtained VIPPS accreditation.

COUNT 1
(Conspiracy to Unlawfully Distribute and Dispense Controlled Substances)

13. The allegations set forth in paragraphs 1 through 12 are incorporated by reference as if set forth fully herein.

14. Under the Controlled Substances Act ("CSA"), Title 21, United States Code, Section 801, et seq., the United States Drug Enforcement Administration ("DEA") regulates certain pharmaceutical drugs that are classified as controlled substances because of their potential for abuse or dependence, their accepted medical use, and their accepted safety for use under medical supervision. Controlled substances are classified in five schedules; Schedule I contains the most dangerous drugs that have the highest potential for abuse or dependence, and Schedule V contains the least dangerous controlled substances. Abuse of Schedule III drugs may lead to moderate or low physical dependence or high psychological dependence. 21 U.S.C. § 812(b)(3).

15. Controlled substances can only be lawfully distributed to individuals with a valid prescription issued by a physician or other authorized health practitioner, except when dispensed directly to a patient by the practitioner (other than a pharmacist). 21 U.S.C. § 829.

16. Title 21, United States Code, Section 821, provides that "[t]hc Attorney General [of the United States] is authorized to promulgate rules and regulations ... relating to the registration and control of the manufacture, distribution and dispensing of controlled substances." All functions vested in the Attorney General by the CSA have been delegated to the Administrator of the DEA. 28 C.F.R. § 0.100 (b). The exercise of this rulemaking authority resulted in Section 1306.04 of Title 21 of the Code of Federal Regulations, which governs the issuance of prescriptions for controlled substances and states that every prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription." A prescription not meeting this standard is invalid. Anyone who knowingly issues or fills an invalid prescription "shall be subject to the penalties provided for violations of the law relating to controlled substances." 21 C.F.R. § 1306.04.

17. A physician who prescribes a controlled substance for an individual based solely on that person's responses to a questionnaire which the individual filled out on the Internet, without ever having examined that individual, is acting outside the usual course of his or her professional practice, and the prescription is not for a legitimate medical purpose and therefore invalid.

18. Fioricet was a prescription drug, containing butalbital, acetaminophen, and caffeine, and was approved to treat tension headaches. Butalbital, a barbiturate, was a Schedule III controlled substance under the CSA, and was habit-forming and potentially abusable. 21 C.F.R. § 1308.13.

19. Effective April 13, 2009, the Controlled Substances Act (CSA), 21 U.S.C. 801, et was amended by the Ryan Haight Online Pharmacy Consumer Protection Act (Ryan Haight Act, Pub. L. No. 110-425, referred to herein as the ("Act") to codify what constitutes a valid prescription as follows: "a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by (i) a practitioner who has conducted at least one in-person medical evaluation of the patient; or (ii) a covering practitioner." 21 U.S.C. § 829(e)(2)(A). The term "in-person medical evaluation" was defined as "a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals." 21 U.S.C. § 829(e)(2)(B)(i).

20. One of the amendments to the CSA made by the Act was that, as of April 13, 2009, no person was permitted to operate as an online pharmacy unless such person was a DEA-registered pharmacy that obtained from DEA a modification of its registration authorizing it to operate as an online pharmacy. 21 U.S.C. § 84l(h)(l) and (2)(A).

21. An online pharmacy was defined in the CSA as "a person, entity, or Internet site, whether in the United States or abroad, that knowingly or intentionally delivers, distributes, or dispenses, or offers to attempt to deliver, distribute, or dispense, a controlled substance by means of the Internet." 21 U.S.C. § 802(52)(A).

22. Another requirement of the CSA as of April 13, 2009, was that every online pharmacy was required to display certain information on its website, or on a page directly linked thereto. The information includes (1) the name and address of the pharmacy as it appeared on the pharmacy's DEA certificate of registration, as well as its telephone number and email address; (2) the name, professional degree, and States of licensure of the pharmacist-in-charge, and a telephone number at which the phamacist-in-charge can be contacted; (3) the name, address, telephone

number, professional degree, and States of licensure of any practitioner who has a contractual relationship to provide medical evaluations or issue prescriptions for controlled substances, through referrals from the website or at the request of the owner or operator of the website; and (4) the following statement: "This online pharmacy will only dispense a controlled substance to a person who has a valid prescription issued for a legitimate medical purpose based upon a medical relationship with a prescribing practitioner." 21 U.S.C. § 831.

23. From at least in or about October 2010 and continuing until at least in or about April 2012, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, **PHILIP MICHAEL, EUTON LAING**, defendants herein, combined, conspired, confederated, and agreed with one another and others, known and unknown to the Grand Jury, to engage in a scheme to sell, distribute, and dispense prescription drugs over the Internet, and to deliver those prescription drugs to customers, without the issuance of valid prescriptions. Specifically, **PHILIP MICHAEL** and **EUTON LAING**, knowingly and intentionally combined, conspired, confederated, and agreed to deliver, distribute, and dispense, and aided and abetted in the delivery, distribution, and dispensing, of controlled substances listed below, by means of the Internet:

(a) Customers would order prescription drugs from prescription websites without ever seeing or speaking to a physician or medical practitioner, rendering the prescription invalid.

(b) The prescription websites were operated by various individuals and/or companies ("Website Operators").

(c) On the prescription website, the customer chose which prescription drugs he or she wished to order, and completed and online medical questionnaire with

prepopulated answers that did not disqualify the customer from receiving the prescription drugs that he or she ordered.

(d) The prescription websites often contained misrepresentations regarding the issuance of the prescription, e.g. indicating that certain prescriptions required a physician consultation prior to the order being filled, but customers were able to make such purchases from the websites without receiving any consultation.

(e) The Website Operator would then send the completed online medical questionnaire by electronic means to a doctor or someone posing as a doctor ("Issuing Doctor"), including **EUTON LAING**, defendant herein, J.N.B., E.S.K. and others known and unknown to the Grand Jury.

(f) The Issuing Doctor issued the prescription requested by the customer, without first conducting an in-person medical examination, speaking with the customer, reviewing medical records of the customer, or otherwise verifying any of the information provided by the customer.

(g) The Website Operator would then send the issued prescription by electronic means to a pharmacy ("Filling Pharmacy"), including Aracoma Pharmacy and Meds 2 Go, Inc., and others known and unknown to the Grand Jury, to be filled. After filling the prescription, the Filling Pharmacy would send the prescription drugs to the customer, who was often not in the same state as the Filling Pharmacy, via the United States Postal Service, or by other delivery methods including Federal Express or United Parcel Service. Certain customers who received prescription drugs ordered from the prescription websites, and filled

and shipped by Aracoma Pharmacy and Meds 2 Go, Inc., were located in the Western District of Kentucky.

(h) These invalid prescriptions were issued outside of the usual course of professional practice, and were not for a legitimate medical purpose;

(i) The prescriptions were issued by an online pharmacy that was not validly registered with DEA with a modified registration authorizing such activity; and

(j) The prescriptions were issued by an online pharmacy that did not display on its website the information required by 21 U.S.C. § 831.

(k) At the time the customer ordered the drugs, the customer would pay for the prescription drugs by credit card on the prescription website.

24. At all times relevant to this Second Superseding Indictment, **PHILIP MICHAEL**, the defendant herein, and others known and unknown to the Grand Jury, billed and caused to be billed to the Wesite Operators prescriptions which Aracoma and Meds 2 Go, Inc. filled on behalf of the Website Operators. The Website Operators would then wire funds from bank accounts controlled by the Website Operators to bank accounts controlled by **PHILIP MICHAEL** and others known and unknown to the Grand Jury.

25. At all times relevant to this Second Superseding Indictment, **EUTON LAING**, defendant herein, along with J.N.B. and E.S.K., and others known and unknown to the Grand Jury, were paid by Website Operators via wire transfer for their issuance of prescriptions for customers who ordered prescription drugs from the prescription websites.

26. At all times relevant to this Second Superseding Indictment, **PHILIP MICHAEL**, through Aracoma and Meds 2 Go, Inc. received payment from Website Operators, including Rx Limited, and others known and unknown to the Grand Jury, for prescriptions Aracoma and Meds 2 Go, Inc.

filled on behalf of the Website Operators for customers who ordered drugs in the Western District of Kentucky and elsewhere. The Website Operators paid **PHILIP MICHAEL** by wiring funds from bank accounts controlled by the website operators to bank accounts controlled by **PHILIP MICHAEL**. During the course of the Internet Pharmacy Scheme, bank accounts controlled by **PHILIP MICHAEL** received approximately $4,000,000 from Website Operators, and others known and unknown to the Grand Jury.

27. At all times relevant to this Second Superseding Indictment, **EUTON LAING**, J.N.B., E.S.K., and others known and unknown to the Grand Jury, were paid by Website Operators via wire transfer for their issuance of prescriptions to customers who ordered prescription drugs from the prescription websites. During the course of the Internet Pharmacy Scheme, J.N.B., received wire transfers in excess of $150,000 from the Website Operators; E.S.K., received wire transfers in excess of $100,000 from Website Operators, including from bank accounts located in Hong Kong; **EUTON LAING**, received wire transfers in excess of $64,000 from Website Operators.

28. From at least in or about October 2010 and continuing until at least in or about April 2012, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, **PHILIP MICHAEL, EUTON LAING**, defendants herein, and others known and unknown to the Grand Jury, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the Controlled Substance Act of the United States in violation of Title 21, United States Code, Sections 846 and 841.

29. It was a part and an object of the conspiracy that **PHILIP MICHAEL, EUTON LAING**, defendants herein, and others known and unknown to the Grand Jury would and did deliver, distribute, and dispense controlled substances by means of the Internet and did aid and abet one

another and others in a manner not authorized by Subchapter I of Chapter 13 of Title 21, United States Code, in violation of Title 21, United States Code, Section 841 (h)(1(A) –(B).

30. The controlled substance involved in the above listed offense was Butalbital, a Schedule III controlled substance, among others Prescription Drugs.

In violation of Title 21, United States Code, Section 846, 841(b)(1)(E) and 841(h)(1)(A)-(B).

The Grand Jury further charges:

COUNT 2
(Conspiracy to Violate the Federal Food, Drug , and Cosmetic Act – Distributing Misbranded Drugs – Meds 2 Go, Inc.)

31. The allegations set forth in paragraph 1 through 30 are incorporated by reference as if set forth fully herein.

32. The United States Food and Drug Administration ("FDA") was the agency of the United States charged with the responsibility of protecting the health and safety of the American public by assuring, among other things, that drugs sold to humans were safe and effective for their intended uses and bore labeling containing true and accurate information. FDA's responsibilities included regulating the labels, labeling, distribution, and manufacture of prescription drugs shipped or received in interstate commerce.

33. Some of the drugs regulated under the FDCA were "prescription drugs." "Prescription Drugs" were those drugs, which, because of their toxicity or other potential harmful effects, or the method of their use, or the collateral measures necessary to their use, were not safe for use except under the supervision of a practitioner licensed by law to administer such drugs, or which were required to be administered under the professional supervision of a practitioner licensed by law to

administer such drugs as a condition of FDA approving any such drug to be placed on the market. 21 U.S.C. § 353(b)(1)(A) and (B).

34. Soma (containing carisoprodol) was a muscle relaxant and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(I)(A) and (B). It was also approved for sale as generic carisoprodol.

35. Ultram (containing tramadol), which may induce psychic and physical dependence, was a painkiller and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B). It was also approved for sale as generic tramadol.

36. Fioricet was a combination drug containing butalbital, acetaminophen, and caffeine, and was approved to treat tension headaches and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B). It was also approved for sale as a generic prescription drug and sold under various names, such as Esgic Plus.

37. The FDCA prohibited the introduction or delivery for introduction into interstate commerce, or the causing of such introduction or delivery, of any drug that was misbranded under 21 U.S.C. § 331(a).

38. The act of dispensing prescription drugs without the prescription of a practitioner licensed by law to administer such drug was an act which caused the drug to become misbranded while held for sale under 21 U.S.C. § 353(b)(l).

39. A drug prescription is invalid under the FDCA unless it is issued in the usual course of professional practice and for a legitimate medical purpose. A valid prescription requires a bona fide physician-patient relationship. Factors that establish the existence of a bona fide physician-patient relationship and thus a valid prescription include: whether the physician considered the actual needs of the patient; the quantity of the drug prescribed; the type of drug prescribed; and for

what purpose; the extent to which the physician supervised the issuance of the drug; and whether the physician adhered to prevailing medical standards when issuing the prescription; and acted in accordance with generally accepted practices.

40. Beginning in or about 2010 and continuing until at least 2012, in the Western District of Kentucky, Jefferson County, Kentucky and elsewhere, defendants, **PHILIP MICHAEL** and **EUTON LAING**, aided and abetted by others, with intent to defraud and mislead, combined, conspired, confederated, and agreed together with each other and others, known and unknown by the Grand Jury, to violate the laws of the United States, and introduced and delivered for introduction into interstate commerce, and caused to be introduced and delivered for introduction into interstate commerce, drugs that were misbranded, in that the defendants distributed and dispensed prescription drugs: which are drugs within the meaning of Title 21, United States Code, Section 321(g)(1), and each of which is a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1), without a prescription of a practitioner licensed by law to administer such prescription drugs in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2). Many of these drugs were ordered by customers in the Western District of Kentucky.

41. It was a part and an object of the conspiracy that **PHILIP MICHAEL, EUTON LAING,** Meds 2 Go, Inc., J.N.B., E.S.K., and others known and unknown to the Grand Jury, would and did introduce and deliver for introduction into interstate commerce, with the intent to defraud and mislead, misbranded drugs, as defined by 21 U.S.C. § 353(b), in violation of 21 U.S.C. § 331(a).

**OBJECT OF THE CONSPIRACY**

42. The object of the conspiracy was for defendants and their co-conspirators to obtain

substantial revenues and profits by illegally offering for sale and selling – without valid prescriptions – prescription drugs, including Fioricet, Soma, and Ultram, and their generic equivalents, via Internet websites and telephone call centers, and causing them to be shipped to consumers in the United States and elsewhere.

**MANNER AND MEANS OF THE CONSPIRACY**

It was part of the conspiracy that:

43. Defendants and their co-conspirators, owned, operated, were affiliated with, and used Internet websites to market prescription drugs offered for sale through various businesses collectively known as RX Limited. RX Limited's marketing websites were linked via the Internet to RX Limited's Internet infrastructure and operating systems, and enabled customers in the Western District of Kentukcy and elsewhere to place drug orders over the Internet, and by various toll-free telephone numbers listed on RX Limited's marketing websites, without a physical examination or bona fide doctor-patient relationship.

44. During the order process, each customer chose the type, quantity, and dosage of prescription drugs the customer wished to purchase, filled out a brief online order form answering questions about the customer's medical condition and history, and paid for the drug order with a credit card.

45. RX Limited did not verify the information customers provided, including their identities, ages, and qualifying medical conditions, and RX Limited's customers did not provide medical records or any prior prescriptions to RX Limited. RX Limited's associates, and their co-conspirators, recruited and paid physicians, those posing as physicians, and pharmacies ("RX Limited physicians" and "RX Limited pharmacies") to authorize sham (invalid) prescriptions and fraudulently dispense prescription drugs. In virtually all instances, RX Limited physicians

had no contact with RX Limited's customers, whether face-to-face, on the telephone, or by electronic mail, and retained no records of their purported "consultations."

46. Defendants and their co-conspirators also arranged and paid for the drugs to be shipped to customers through various shipping accounts with commercial carriers and the United States Postal Service. In doing so, the defendants and their co-conspirators unlawfully dispensed, caused to be dispensed, and aided and abetted the dispensing of prescription drugs to customers who lived throughout the United States, including in the Western District of Kentucky, without (a) verifying the customers' medical complaint, (b) having an adequate patient history, (c) performing a mental or physical exam, (d) using appropriate diagnostic or laboratory testing and (e) providing a means to monitor the customer's response to the medication.

Overt Acts

47. It was a part and an object of the conspiracy that **PHILIP MICHAEL, EUTON LAING,** Meds 2 Go, Inc., J.N.B., E.S.K., and others known and unknown by the Grand Jury, would and did introduce and deliver for introduction into interstate commerce, with the intent to defraud and mislead, misbranded drugs, as defined by 21 U.S.C. § 353(b), in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).

48. In furtherance of the conspiracy and to effect the illegal object thereof, **PHILIP MICHAEL, EUTON LAING**, Meds 2 Go, Inc., J.N.B., E.S.K., and others known and unknown to the Grand Jury, committed the following overt acts, among others, in the Western District of Kentucky and elsewhere:

a. On or about April 9, 2012, F.J. made a purchase of prescription drugs from a website operated by RX Limited. F.J. made the purchase from Kentucky. The order was received and approved by an Issuing Doctor for RX Limited. The

prescription drugs were filled by Meds 2 Go, Inc. and shipped to the customer from West Virginia. As a result of the purchase, defendants **PHILIP MICHAEL** and Meds 2 Go, Inc. received payment for this purchase, which caused a wire transfer on or about April 13, 2012, in the amount of approximately $45,000 to be sent from a bank account in Hong Kong to a bank account controlled by **PHILIP MICHAEL** in Charleston, West Virginia.

b. On or about October 27, 2011, F.J. made a purchase of prescription drugs from a website operated by RX Limited. F.J. made the purchase from Kentucky. The order was received and approved by an Issuing Doctor for RX Limited. The Prescription Drugs were filled by Meds 2 Go, Inc. and shipped to the customer from West Virginia. As a result of the purchase, defendants including **PHILIP MICHAEL** and Meds 2 Go, Inc. received payment for this purchase, which caused a wire transfer on or about November 4, 2011, in the amount of approximately $52,000 to be sent from a bank account in Hong Kong to a bank account controlled by **PHILIP MICHAEL** in Charleston, West Virginia.

c. On or about February 15, 2012, M.R. made a purchase of prescription drugs, including Tramadol, from a website operated by RX Limited. F.J. made the purchase from Kentucky. The order was received and approved by an Issuing Doctor for RX Limited. The prescription drugs were filled by Meds 2 Go, Inc. and shipped to the customer from West Virginia. As a result of the purchase, defendants including **PHILIP MICHAEL** and Meds 2 Go received payment for this purchase, which caused a wire transfer on or about February 24, 2012, in the amount of

approximately $40,000 to be sent from a bank account in Hong Kong to a bank account controlled by **PHILIP MICHAEL** in Charleston, West Virginia.

d. On or about March 28, 2012, J.K., made a purchase of prescription drugs from a website operated by RX Limited. J.K. made the purchase from the Western District of Kentucky. The order was received and approved by an Issuing Doctor for RX Limited. The prescription drug order was filled by Meds 2 Go, Inc. and shipped to the customer from West Virginia. As a result of the purchase, defendant, including **PHILIP MICHAEL** and Meds 2 Go, Inc. received payment for this purchase, which caused a wire transfer on or about April 10, 2012, in the amount of approximately $53,000 to be sent from a bank account in Hong Kong to a bank account controlled by **PHILIP MICHAEL** in Charleston, West Virginia.

In violation of Title 21, United States Code, Sections 331(a), 333(a)(2), 353(b)(1), Title 18, United States Code, Sections 2 and 371.

The Grand Jury further charges:

COUNT 3
(Conspiracy to Distribute Misbranded Drugs – Aracoma Pharmacy)

49. The allegations set forth in paragraphs 1 through 48 are incorporated by reference as if set forth fully herein.

50. Beginning in or about June 2009 and continuing until at least May 2012, in the Western District of Kentucky, Jefferson County, Kentucky and elsewhere, defendants, **PHILIP MICHAEL, EUTON LAING** and others, aided and abetted by each other and others, known and unknown by the Grand Jury, with intent to defraud and mislead, combined, conspired, confederated, and agreed together and with each other and others to violate the laws of the United

States and introduced and delivered for introduction into interstate commerce, and caused to be introduced and delivered for introduction into interstate commerce, drugs that were misbranded, in that the defendant distributed and dispensed prescription drugs: which are drugs within the meaning of Title 21, United States Code, Section 321(g)(1), and each of which is a prescription drug within the meaning of Title 21, United States Code, Sections 353(b)(1) and 333(a)(2), without a prescription of a practitioner licensed by law to administer such prescription drugs. Many of these drugs were ordered by customers in the Western District of Kentucky.

51. It was a part and an object of the conspiracy that **PHILIP MICHAEL, EUTON LAING**, J.N.B., E.S.K., and others known and unknown to the Grand Jury, would and did introduce and deliver for introduction into interstate commerce, with the intent to defraud and mislead, misbranded drugs, as defined by 21 U.S.C. § 353(b), in violation of 21 U.S.C. § 331(a).

Overt Acts

52. It was a part and an object of the conspiracy that **PHILIP MICHAEL, EUTON LAING**, J.N.B., E.S.K., and others known and unknown by the Grand Jury, would and did introduce and deliver for introduction into interstate commerce, with the intent to defraud and mislead, misbranded drugs, as defined by 21 U.S.C. § 353(b), in violation of 21 U.S.C. § 331(a).

53. In furtherance of the conspiracy and to effect the illegal object thereof, **PHILIP MICHAEL, EUTON LAING**, J.N.B., E.S.K., and others known and unknown to the Grand Jury, committed the following overt acts, among others, in the Western District of Kentucky and elsewhere:

a. On or about January 31, 2011, M.S. made a purchase of prescription drugs, including Tramadol, from a website operated by RX Limited. M.S. made the purchase from Indiana. The order was received and approved by **EUTON LAING**,

defendant herein, and an Issuing Doctor for RX Limited. The prescription drug order was filled by Aracoma Pharmacy and shipped to the customer through the Western District of Kentucky. As a result of the purchase, defendants including **PHILIP MICHAEL**, **EUTON LAING**, and Meds 2 Go, Inc. received payment for this purchase. The payment for **PHILIP MICHAEL** and Meds 2 Go, Inc. caused a wire transfer on or abouit February 7, 2011 in the amount of approximately $41,000 to be sent from a bank account in Hong Kong to a bank account controlled by **PHILIP MICHAEL** in Charleston, West Virginia.

b. On or about June 23, 2011, M.T. made a purchase of prescription drugs, including Tramadol, from a website operated by RX Limited. M.T. made the purchase from Indiana. The order was received and approved by an Issuing Doctor for RX Limited. The prescription drug order was filled by Aracoma Pharmacy and shipped to the customer from West Virginia. As a result of the purchase, defendants including **PHILIP MICHAEL** and Meds 2 Go, Inc., received payment for this purchase, which caused a wire transfer on or about July 7, 2011 in the amount of approximately $181,000 to be sent from a bank account in Hong Kong to a bank account controlled by **PHILIP MICHAEL** in Charleston, West Virginia.

c. On or about September 15, 2011, F.J. made a purchase of drugs from a website operated by RX Limited. F.J. made the purchase from Kentucky. The order was received and processed by an Issuing Doctor for RX Limited. The prescription drug order was filled by Aracoma and shipped through the Western District of Kentucky to the customer. As a result of the purchase, defendants including **PHILIP MICHAEL** and Meds 2 Go, Inc. received payment for this purchase,

which caused a wire transfer on or about September 23, 2011, in the amount of approximately $59,000 to be sent from a bank account in Hong Kong to a bank account controlled by **PHILIP MICHAEL** in Charleston, West Virginia.

d. On or about March 15, 2012, , an under law enforcement agent ("UC-1") placed an order purchasing prescription drugs, including Fioricet, from a website operated by RX Limited. UC-1 made the purchase from Minnesota. The order was received and approved by **EUTON LAING**, defendant herein, and an Issuing Doctor for RX Limited. The prescription drug order was filled by Aracoma and shipped to the customer. As a result of the purchase, defendants including **PHILIP MICHAEL, EUTON LAING**, and Aracoma Pharmacy received payment for this purchase.

In violation of Title 21, United States Code, Sections 331(a), 333(a)(2), 353(b)(1), Title 18, United States Code, Sections 2 and 371.

The Grand Jury further charges:

COUNT 4
(Mail Fraud Conspiracy)

54. The allegations set forth in paragraphs 1 through 5357 are incorporated by reference as if set forth fully herein.

55. From at least in or about June 2009, up to and including in or about April 2012, in the Western District of Kentucky and elsewhere, **PHILIP MICHAEL, EUTON LAING,** Meds 2 Go, Inc., and others, known and unknown by the Grand Jury, knowingly and willfully did combine, conspire, and confederate, and agree together with each other and others to commit mail fraud, in violation of Title 18, United States Code, Section 1341.

56. It was a part of the conspiracy that **PHILIP MICHAEL, EUTON LAING**, Meds 2 Go, Inc., and others known and unknown by the Grand Jury, did knowingly and willfully, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme an artifice and attempting to do so, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carrier, and would and did take and receive therefrom, such matters and things, and would and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the persons to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

57. In furtherance of the conspiracy **PHILIP MICHAEL, EUTON LAING**, Meds 2 Go, Inc., and others known an unknown by the Grand Jury, committed the following overt acts, among others, by illegally dispensing from Aracoma Pharmacy the following prescription drugs in the Western District of Kentucky and elsewhere:

| Date | Customer Initials | Drug | State Ordered From | State Shipped To | Shipment Carrier |
|---|---|---|---|---|---|
| 8/11/2010 | B.L. | Tramadol | Kentucky | Indiana | FED EX |
| 7/13/2011 | S.H. | Fioricet | Kentucky | Kentucky | FED EX |
| 9/26/2011 | M.T. | Butalbital/ Acetamin/ Caffeine | Indiana | Indiana | USPS |

In violation of Title 18, United States Code, Sections 2, 1341 and 1349.

The Grand Jury further charges:

COUNT 5
(Wire Fraud Conspiracy)

58. The allegations set forth in paragraphs 1 through 57 are incorporated by reference as if set forth fully herein.

59. Beginning in or about June 2009 and continuing until at least or about April 2012, in the Western District of Kentucky and elsewhere, **PHILIP MICHAEL, EUTON LAING**, Meds 2 Go, Inc., and others known and unknown to the Grand Jury, did knowingly and willingfully, combine, conspire, and confederate, and agree together and with each other and others to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

60. It was a part of the conspiracy that **PHILIP MICHAEL, EUTON LAING**, Meds 2 Go, Inc., and others known and unknown by the Grand Jury, did knowingly and willfully, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme an artifice and attempting to do so, would and did transmit and cause to be transmitted by means of wire, radio, and television communications in interstate commerce, writings signs and signals, pictures and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

61. In furtherance of the conspiracy **PHILIP MICHAEL, EUTON LAING**, Meds 2 Go, Inc., and others known an unknown by the Grand Jury, committed the following acts, among others, by receiving payment by wire transfer for illegally dispensed prescription drugs from Aracoma Pharmacy without a valid prescription the following in the Western District of Kentucky and elsewhere:

| DATE | CUSTOMER INITIALS | DRUG ORDERED | PURCHASE WIRE INITIATED FROM | PAYMENT WIRE FROM RX LTD TO WEST VIRGINIA PHARMACY |
|---|---|---|---|---|
| 04/19/12 | B.L. | Tramadol | Kentucky | Aracoma |
| 06/01/11 | S.H. | Fioricet | Kentucky | Meds 2 Go |
| 04/09/12 | F.J. | Acyclovir | Kentucky | Meds 2 Go |
| 10/27/11 | F.J. | Viagra | Kentucky | Meds 2 Go |
| 10/27/11 | F.J. | Acyclovir | Kentucky | Meds 2 Go |
| 04/19/12 | M.R. | Tramadol | Kentucky | Meds 2 Go |
| 04/6/12 | M.R. | Tramadol | Kentucky | Meds 2 Go |
| 12/16/11 | M.R. | Tramadol | Kentucky | Meds 2 Go |
| 01/13/12 | M.R. | Tramadol | Kentucky | Meds 2 Go |
| 11/29/10 | K.T. | Ultracet | Kentucky | Meds 2 Go |
| 01/23/12 | K.T. | Ultracet | Kentucky | Meds 2 Go |
| 04/27/12 | J.K. | Tramadol | Kentucky | Meds 2 Go |

In violation of Title 18, United States Code, Sections 2, 1343 and 1349.

The Grand Jury further charges:

COUNT 6

(Engaged in the Unlicensed Wholesale Distribution of Prescription Drugs)

62. The allegations set forth in paragraphs 1 through 61 are incorporated by reference as if set forth fully herein.

63. From on or about November 2012 to August 2014, and as part of a continuous course of conduct, **PHILIP MICHAEL**, **MARK REINHARD**, **MEDS TO GO EXPRESS**, and others, known and unknown by the Grand Jury, did knowingly engage in the wholesale distribution of a

prescription drugs, that is, Tramadol, in the states of Alabama and West Virginia, without ever having obtained a drug distribution licenses from the states of Alabama and West Virginia, as required by 21 U.S.C. 353(e)(2)(A). **PHILIP MICHAEL, MARK REINHARD**, and others, known and unknown by the Grand Jury, distributed the prescription drug Tramadol from West Virginia to Complete Patient Services, another wholesale fulfillment pharmacy, located in Mobile, Alabama, said prescription drugs traveled through Kentucky.

In violation of Title 21, United States Code, Sections 331(t), 353(e)(1)(a)(II), and 333 (b)(1)(D), and Title 18, United States Code, Section 2.

The Grand Jury further charges:

COUNT 7
(Health Care Fraud)

64. On or about and between September 17, 2013, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendant, **PHILIP MICHAEL**, knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, to wit: **PHILIP MICHAEL** fraudulently submitted a claim for payment to Humana Insurance Company for dispensing medication to P.R. which was never dispensed.

In violation of Title 18, United States Code, Section 1347.

The Grand Jury further charges:

COUNT 8
(Aggravated Identity Theft)

65. On or about September 17, 2013, in the Western District of Kentucky, Jefferson County,

Kentucky, and elsewhere, the Defendant herein, **PHILIP MICHAEL**, did knowingly possess, transfer and use the means of identification of another person, without lawful authority, during and in relation to the offense charged in Count 7, to wit **PHILIP MICHAEL** possessed, transferred, and used the name, date of birth and other identifying information for P.R. and the name and NPI # of A.S., a physician, to submit a fraudulent claim for payment.

In violation of Title 18, United States Code, Sections 1028A(a)(1) and (c)(11).

The Grand Jury further charges:

COUNT 9
(Conspiracy to Commit Money Laundering)

66. The allegations set forth in paragraphs 1 through 64 of the Second Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

67. Beginning in or about May 2004, the exact date being unknown to the Grand Jury, and continuing until at least December 2012, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, **PHILIP MICHAEL, MEDS 2 GO EXPRESS,** Meds 2 Go, Inc., and **EUTON LAING**, and others known and unknown to the Grand Jury, knowingly combined, conspired, confederated, and agreed together, and with others known and unknown to the Grand Jury, to knowingly transport, transmit, and transfer funds and monetary instruments in a series of transactions of a value exceeding $10,000, from a place outside the United States, that is, Hong Kong, to places within the United States, with intent to promote the carrying on specified unlawful activities, that is mail fraud, wire fraud, and Controlled Substance Act offenses in violation of Title 18, United States Code, Section, 1956(a)(2)(A).

68. Beginning in or about November 2006, the exact date being unknown to the Grand Jury, and continuing until at least July 2012, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, **PHILIP MICHAEL, MEDS 2 GO EXPRESS, EUTON LAiNG,** Meds 2 Go, Inc., and others known and unknown to the Grand Jury, knowingly combined conspired and agreed together, and with others known and unknown to the Grand Jury, to commit certain offenses under Title 18, United States Code, Sections 1956 and 1957 as follows:

a. to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of specified unlawful activity, namely, wire fraud, and conspiracy to commit wire fraud, knowing that the property involved in the financial transactions represented the proceeds of some form of illegal activity, with the intent to promote the carrying on of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

b. to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of specified unlawful activity, namely, wire fraud and conspiracy to commit wire fraud, knowing that the property involved in the financial transactions represented the proceeds of some form of illegal activity and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

c. to knowingly engage, attempt to engage and cause and aid and abet others to engage in monetary transactions affecting interstate and foreign commerce in criminally

derived property of a value greater than $10,000.00 and derived from specified unlawful activity, namely, wire fraud, and conspiracy to commit wire fraud.

In violation of Title 18, United States Code, Section 1956(h) and 1957.

The Grand Jury further charges:

COUNT 10
(Obstruction of Criminal Investigation)

69. The Grand Jury realleges paragraphs 1 through 68 of the Second Superseding Indictment as if set forth in full herein.

70. On or about July 15, 2015, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, **JOETTA KUHN**, did willfully prevent, obstruct, mislead, and delay and attempt to prevent, obstruct, mislead or delay the communication of information and records related to a violation of a Federal offense to a criminal investigator: to wit, the defendant provided misleading information to criminal investigators.

In violation of Title 18, United States Code, Sections 1519.

NOTICE OF FORFEITURE

As a result of committing violations of Title 21, United Sates Code, Sections 371, 841, 846, 1028A, 1956 and 1957 as alleged in this Second Superseding Indictment, the defendants shall forfeit to the United States any and all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds obtained as a result of these offenses, and any property was involved in and facilitated these offenses.

As a result of committing violations of Title 18, United States Code, Sections 371, 1341, 1343, and 1347, as alleged in this Second Superseding Indictment, the defendants shall forfeit to

the United States any and all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds obtained as a result of these offense.

The property subject to forfeiture in this Second Superseding Indictment includes but is not limited to the following:

1. Real Property including all improvements thereon and appurtenances thereto, located on or about 203 Georgetown Place, Charlestown West Virginia;

2. Contents of accounts: SEP IRA annuity # XXXX1329 and SEP IRA annuity # XXXX1286, held by Northwestern Mutual Investment Services, LLC; 720 East Wisconsin Avenue, Milwaukee, WI 53202;

3. Life Insurance Policy # 14705403 (including cash value) and Life Insurance Policy # 7192727 (including cash value), held by Northwestern Mutual Life Insurance Company, 720 East Wisconsin Avenue Milwaukee, WI 53202;

4. Vehicles including but not limited to: 2011 Jeep Grand Cherokee, 2011 Cadillac Escalade, 2008 Toyota Sequoia, and 2007 Chevy Corvette (associated with Defendants Philip Michael and Meds 2 Go).

5. Money Judgment for the gross proceeds of offenses charged in this Indictment, approximately and not less than five (5) million dollars.

6. Substitute Assets: if any of the above-described forfeitable property, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. 853(p), to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(1) and (2)(B) and (7), and 1028; Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461.

A TRUE BILL.

FOREPERSON

JOHN E. KUHN, JR.
UNITED STATES ATTORNEY

JEK:LJW: 20161114

UNITED STATES OF AMERICA v. **PHILIP E. MICHAEL, II, MEDS 2 GO EXPRESS PHARMACY, INC., MARK REINHARD, EUTON LAING**, and **JOETTA KUHN**

**PENALTIES**

| | |
|---|---|
| Counts 1, 6, 7, and 9: | NM 10 yrs./$250,000/both/NM 3 yrs. Supervised Release (each count) |
| Counts 2, 3 and 10: | NM 5 yrs./$250,000/both/NM 3 yrs. Supervised Release (each count) |
| Counts 4 and 5: | NM 20 yrs./$250,000/both/NM 3 yrs. Supervised Release (each count) |
| Count 8: | 2 yrs. consecutive//$250,000/both/NM 3 yrs. Supervised Release |
| Forfeiture | |

**NOTICE**

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

| | | | |
|---|---|---|---|
| Misdemeanor: | $ 25 per count/individual<br>$125 per count/other | Felony: | $100 per count/individual<br>$400 per count/other |

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due immediately unless the court issues an order requiring payment by a date certain or sets out an installment schedule. You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court. 18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following:**

1. **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

   For offenses occurring after December 12, 1987:

   No **INTEREST** will accrue on fines under $2,500.00.

   **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing. This rate changes monthly. Interest accrues from the first business day following the two week period after the date a fine is imposed.

   **PENALTIES** of:

   10% of fine balance if payment more than 30 days late.

   15% of fine balance if payment more than 90 days late.

2. Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3. Continuous **GARNISHMENT** may apply until your fine is paid.

18 U.S.C. §§ 3612, 3613

If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law. 18 U.S.C. § 3663

APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1. That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2. Give bond for payment thereof.

18 U.S.C. § 3572(g)

PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made payable to the Clerk, U.S. District Court and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY 40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY 42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY 42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY 42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.

FORM DBD-34
JUN.85

No. 3:16CR-101-CRS

# UNITED STATES DISTRICT COURT

Western District of Kentucky
Louisville Division

THE UNITED STATES OF AMERICA
vs.
PHILIP E. MICHAEL, II;

MEDS 2 GO EXPRESS PHARMACY, INC.

MARK REINHARD; EUTON LAING; JOETTA KUHN

## SECOND SUPERSEDING INDICTMENT

**Title 21 U.S.C. §§ 846; 841(b)(1)(E); 841(h)(1)(A)-(B); 331(a); 333(a)(2); 353(b)(1); 331(t); 353(e)(1)(a)(II); 333(b)(1)(D); Title 18 U.S.C. §§ 2; 371; 1341; 1349; 1343; 1347; 1028A(a)(1); 1028A(c)(11); 1956(h); 1957; 1519:**

**Conspiracy to Unlawfully Distribute and Dispense Controlled Substances; Conspiracy to Violate the Food, Drug, and Cosmetic Act; Conspiracy to Distribute Misbranded Drugs; Mail Fraud Conspiracy; Wire Fraud Conspiracy; Engaging in the Unlicensed Wholesale Distribution of Prescription Drugs; Health Care Fraud; Aggravated Identity Theft; Conspiracy to Commit Money Laundering; Obstruction of Criminal Investigation.**

*A true bill*

[signature] *Foreman*

*Filed in open court this 16th* day, of November A.D. 2016.

*Clerk*

FILED
VANESSA L. ARMSTRONG
NOV 16 2016
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

*Bail, $*